UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ROSEMARY MACMORRIS, individually and
and as personal representative of
the estate of Clifford Macmorris,
deceased,

            Plaintiff,

vs.                                   Case No. 2:04-cv-596-FtM-29DNF

WYETH, INC. f/k/a American Home
Products Corporation a/k/a Wyeth
Company, WYETH-AYERST LABORATORIES
COMPANY, WYETH PHARMACEUTICALS,
INC., UPSHER-SMITH LABORATORIES,
INC., SANDOZ GMBH, SANDOZ, INC., fka
Geneva Pharmaceuticals, Inc., EON
LABS, INC., f/k/a Eon Labs
Manufacturing, Inc., ALPHAPHARM PTY
LIMITED, PAR PHARMACEUTICAL, INC.,

            Defendants.
_____

**OPINION AND ORDER**

     This matter comes before the Court on motions to dismiss the Second Amended Complaint filed separately by eight of the nine defendants.[1] (Docs. #28-29, 31, 36-37).[2] Plaintiff filed her

---

[1] It does not appear that defendant Alphapharm Pty Limited ("Alphapharm") has been served yet. Consequently, Alphapharm has not responded to the Second Amended Complaint. For purposes of this Order, the Court will omit any discussion of the allegations in the Second Amended Complaint as they pertain to Alphapharm.

[2] Defendant Par Pharmaceuticals, Inc. filed a Motion to Dismiss the Second Amended Complaint (Doc. #29) that is virtually identical to the 12(b)(6) motion (Doc. #28), which defendants Wyeth, Inc.,
(continued...)

Opposition to Defendants' Motions to Dismiss (Doc. #41) on March 9, 2005.

**I.**

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff. Christopher v. Harbury, 536 U.S. 403, 406 (2002); Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003). A complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts that would entitle them to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (footnote omitted); Marsh v. Butler County, Ala., 268 F.3d 1014, 1022 (11th Cir. 2001)(en banc). To satisfy the pleading requirements of Fed. R. Civ. P. 8, a complaint must simply give the defendant fair notice of what the plaintiff's claims are and the grounds upon which they rest. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002). The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Secs., Inc., 358 F.3d 840, 845 (11th Cir.

---

[2](...continued)
Wyeth-Ayerst Laboratories Company, and Wyeth Pharmaceuticals, Inc. (collectively referred to as "Wyeth") filed on January 24, 2005. Additionally, the other defendants filed motions adopting and incorporating the arguments set forth in their co-defendants Par Pharmaceuticals, Inc.'s and Wyeth's 12(b)(6) motions. (Docs. #31, 36-37). In short, all the defendants make the same arguments and invoke the same defenses against plaintiff's allegations in the Second Amended Complaint.

2004).  Dismissal is warranted however if, assuming the truth of the factual allegations of the plaintiff's complaint, there is a dispositive legal issue which precludes relief.  Neitzke v. Williams, 490 U.S. 319, 326 (1989); Brown v. Crawford County, Ga., 960 F.2d 1002, 1009-10 (11th Cir. 1992).  The Court need not accept unsupported conclusions of law or of mixed law and fact in a complaint.  Marsh, 268 F.3d at 1036 n.16.

Additionally, a party may not incorporate all allegations of each count in every successive count.  Magluta v. Samples, 256 F.3d 1282, 1284 (11th Cir. 2001); Cramer v. State of Fla., 117 F.3d 1258, 1263 (11th Cir. 1997).  Here, each count of the Second Amended Complaint incorporates all paragraphs in all the previous counts.  Accordingly, except for Count I, the Second Amended Complaint is a shotgun pleading.  The Court will discuss below whether the counts are otherwise also subject to dismissal.

**II.**

In her Second Amended Complaint, plaintiff Rosemary MacMorris, individually and as personal representative of the estate of Clifford MacMorris, the deceased, contends that defendants' failure to warn of the dangers of and/or the defective design of Amiodarone[3] caused his death.  Specifically, plaintiff asserts that

---

[3]The drug Amiodarone is also known under the names Cordarone®, which is manufactured and sold by defendant Wyeth, and Pacerone®, which is manufactured and sold by defendant Upsher-Smith Laboratories, Inc.  The Court will refer to the subject drug as Amiodarone from hereon.

Mr. MacMorris suffered injury and death as a result of his consumption of Amiodarone which was manufactured and/or distributed by defendants. (Doc. #27, p. 6). According to plaintiff, defendants failed to provide adequate warnings and/or manufactured and distributed a drug which was defective and in an unreasonably dangerous condition. (Id., p. 37).

The Federal Drug Administration approved Amiodarone for marketing to the public as a drug of last resort for patients who suffer from recurrent life-threatening ventricular fibrillation and ventricular tachycardia, and only when those conditions would not respond to other available antiarrhythmic drugs and therapies. Plaintiff contends that defendants "embarked on a course of conduct the purpose of which was to increase Amiodarone sales as an initial, first-line antiarrhythmic medication, for which Amiodarone has never received FDA approval." (Id., pp. 7-8).

Plaintiff alleges that, in reliance on the express warranty indicating Amiodarone was a safe drug, her husband purchased and ingested Amiodarone, which was manufactured or distributed by each defendant. This express warranty can be found in the direct-to-consumer advertisements. Plaintiff states that defendants did not provide an adequate warning of the negative effects of the use of Amiodarone despite having knowledge of the dangers. As a result of consuming Amiodarone, Mr. MacMorris suffered "pulmonary fibrosis secondary to Amiodarone toxicity, excruciating pain and injuries,

Case 2:04-cv-00596-JES-DNF Document 43 Filed 06/27/05 Page 5 of 13 PageID 495

agonizing aches, mental anguish, loss of enjoyment of life and life's pleasures, and ultimately, death." (Doc. #27, p. 30).

The eleven-count Second Amended Complaint (Doc. #27) alleges the following causes of action under Florida law[4] as to various defendants: (1) wrongful death, negligence; (2) wrongful death, strict products liability; (3) wrongful death, breach of express warranty; (4) wrongful death, fraud; (5) unjust enrichment; (6) outrage (intentional infliction of emotional distress); (7)-(11) alternative claims under the Florida Survival Statute, FLA. STAT. § 46.021; (12) loss of consortium claim under the Survival Statute.

Defendants contend that the Second Amended Complaint should be dismissed because (1) off-label marketing of prescription drugs by a manufacturer is not unlawful; (2) plaintiff is barred by the learned intermediary doctrine from bringing the negligence, strict liability, and fraud claims against them (Counts I, II, and IV), (3) the counts fail to state any claim under Florida law for a breach of express warranty, unjust enrichment, or intentional infliction of emotional distress (Counts III, V, and VI); and (4) the deficiencies in Counts I-VI which are equally applicable to the alternative claims under the Survival Statute. Defendants do not address plaintiff's loss of consortium claim (Count XII).

---

[4]A federal court sitting in diversity jurisdiction applies the substantive law of the forum state unless federal constitutional or statutory law compels a contrary result. Technical Coating Applicators, Inc. v. United States Fid. & Guar. Co., 157 F.3d 843, 844 (11th Cir. 1998). Both parties agree that Florida law applies to this case.

**III.**

**A.  "Off-Label" Marketing**

Defendants argue that those portions of the Second Amended Complaint which refer to "off-label" marketing of Amiodarone should be dismissed or stricken because "off-label" marketing of prescription drugs by a manufacturer is not illegal.  The Second Amended Complaint specifically alleges the contrary, and the federal regulation and case law supports plaintiff's legal position.  Therefore, this ground for dismissal will be denied.

**B.  Learned Intermediary Doctrine (Counts I, II, and IV)**

Defendants argue that Counts I, II, and IV must be dismissed to the extent they allege a duty to provide warnings or other information directly to a consumer.  Defendants assert that under Florida's learned intermediary doctrine the manufacturer's duty to warn runs only to the physician, not directly to the patient.

Under Florida law, a manufacturer's duty to warn of drug hazards runs to the physician, not directly to the patient, and therefore a manufacturer of prescription drugs or products discharges its duty to warn by providing the physician with information about risks associated with those products. Christopher v. Cutter Labs., 53 F.3d 1184, 1192 (11th Cir. 1995), citing Felix v. Hoffmann-LaRoche, Inc., 540 So. 2d 102, 105 (Fla. 1989).  The learned intermediary doctrine is a corollary to this rule, and provides that the failure of the manufacturer to provide

a physician with an adequate warning of the risks associated with a prescription product is not the proximate cause of a patient's injury if the prescribing physician had independent knowledge of the risk that the adequate warning should have communicated. Christopher, 53 F.3d at 1192. In other words, the causal link between a patient's injury and the alleged failure to warn is broken when the prescribing physician had "substantially the same" knowledge as an adequate warning from the manufacturer should have communicated to him. Christopher, 53 F.3d at 1192; Tatum v. Schering Corp., 795 F.2d 925, 928 (11th Cir. 1986).

The learned intermediary doctrine is a fact-intensive affirmative defense which cannot be resolved in this case pursuant to a motion to dismiss. Defendants also seek to dismiss these counts because the duty to warn runs to the physician and not the patient. The duty is to the physician, not the patient, because "the prescribing physician, acting as a 'learned intermediary' between the manufacturer and the consumer, weighs the potential benefits against the dangers in deciding whether to recommend the drug to meet the patients needs." Felix, 540 So. 2d at 104. The Second Amended Complaint alleges that the manufacturers marketed Amiodarone to consumers, and defendants have not cited any case which requires dismissal under this circumstance. Therefore, this ground for dismissal will be denied.

**C. Inadequate Testing and Investigation**

Defendants seek dismissal of Counts I and II to the extent they are premised upon the failure to perform adequate testing and investigation, which does not provide an independent cause of action. Plaintiff agrees with this legal principle, but states these allegations were not raised as a separate and independent cause of action. Therefore, the motion to dismiss or strike will be denied as to these allegations.

**D.  Count III – Breach of Express Warranty**

Defendants contend that there can be no claim for breach of express warranty without privity between Mr. MacMorris and the defendants, and plaintiff made no allegations that Mr. MacMorris purchased Amiodarone directly from any of the defendants. Plaintiff counters that, at least under some factual circumstances, Florida law recognizes a viable claim for breach of express warranty when the consumer purchased the product from a third party.

The general rule requires privity in order to state an express warranty claim. See Intergraph Corp. v. Stearman, 555 So. 2d 1282, 1283 (Fla. 2d DCA 1990) ("Privity is required in order to recover damages from the seller of a product for breach of express or implied warranties."); see also Spolski Gen. Contractor, Inc. v. Jett-Aire Corp. Aviation Mgmt. of Cent. Fla., Inc., 637 So. 2d 968, 970 (Fla. 5th DCA 1994) (manufacturer of floor paint could not be held liable to general contractor for breach of express warranties, where there was no sale from manufacturer to contractor, no privity

between them, no contract between them, no reliance by contractor on any warrant, and no warranty was given to contractor). Other cases have held, however, that some factual circumstances satisfy the privity requirement even in the absence of a purchase directly from the manufacturer. New Nautical Coatings, Inc. v. Scoggin, 731 So. 2d 145, 147 (Fla. 4th DCA 1999) (finding privity when the paint manufacturer's representative was heavily involved in the transaction where the third-party paint shop provided the services to the plaintiff); see also ISK Biotech Corp. v. Douberly, 640 So. 2d 85 (Fla. 1st DCA 1994) (finding privity where manufacturer's representative informed the third-party fungicide seller that the seller could assure the plaintiff that the subject fungicide would not destroy the plaintiff's crop); Cedars of Lebanon Hosp. Corp. v. European X-Ray Distribs. of Am., Inc., 444 So. 2d 1068, 1072 n.4 (privity existed where manufacturer's representative made express warranty through the direct contacts with the ultimate purchaser/consumer who bought the product from the third party distributor). At the motion to dismiss stage the Court cannot determine that privity will fail in this case. The motions will be denied as to Count III.

**E.   Count V – Unjust Enrichment**

Defendants argue the claim for unjust enrichment should be dismissed because plaintiff failed to make any allegations that Mr. MacMorris obtained the Amiodarone directly from them. Plaintiff responds that privity is not a necessary element for an unjust

enrichment claim, and that courts recognize this claim even where consumers did not deal directly with the manufacturer who was unjustly enriched.

Under Florida law, "[t]he elements of a cause of action for unjust enrichment are: (1) the Plaintiff has conferred a benefit on the Defendant; (2) the Defendant has knowledge of the benefit; (3) the Defendant has accepted or retained the benefit conferred; and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value." Media Servs. Group, Inc. v. Bay Cities Communications, Inc., 237 F.3d 1326, 1330-31 (11th Cir. 2001); citing Swindell v. Crowson, 712 So. 2d 1162, 1163 (Fla. 2d DCA 1998); see also Shands Teaching Hosp. and Clinics, Inc. v. Beech Street Corp., 899 So. 2d 1222, 1227 (Fla. 1st DCA 2005). Plaintiff is correct that indirect purchasers have been allowed to bring an unjust enrichment claim against a manufacturer. Plaintiff alleges that a benefit was conferred on defendants (Doc. #27, pp. 44-45), and at this stage of the proceedings the Court cannot say that the count cannot be sustained. The motions will be denied as to Count V.

**F.  Count VI – Intentional Infliction of Emotional Distress**

Defendants contend that this count is insufficient because plaintiff failed to adequately plead the element of intent, which requires that the misconduct was directed specifically at her or the decedent. Plaintiff asserts that she has sufficiently pleaded the allegations for Count VI in paragraphs 39-122 and 184-187 in

the Second Amended Complaint, and that defendants confuse the elements of negligent infliction of emotional distress with the elements of intentional infliction of emotional distress.

To state a claim for intentional infliction of emotional distress under Florida law, the plaintiff must allege: (1) deliberate or reckless infliction of mental suffering; (2) by outrageous conduct; (3) which conduct must have caused the suffering; and (4) the suffering must have been severe. <u>Hart v. United States</u>, 894 F.2d 1539, 1548 (11th Cir. 1990); citing <u>Metropolitan Life Ins. Co. v. McCarson</u>, 467 So.2d 277, 278 (Fla. 1985) (adopting definition laid out in Restatement (Second) of Torts § 46). In Florida, conduct is intentional "[w]here the actor knows that [severe] distress is certain, or substantially certain to result from his conduct." <u>Hart</u>, 894 F.2d at 1548; quoting <u>Ford Motor Credit Co. v. Sheehan</u>, 373 So. 2d 956, 958 (Fla. 1st DCA 1979) (debt collector seeking to repossess plaintiff's car called his mother and told her the caller needed to get in touch with plaintiff because plaintiff's children had been in a serious automobile accident in another state). Viewing the facts pleaded in the Second Amended Complaint in the light most favorable to plaintiff, and drawing all inferences in plaintiff's favor, the Court concludes that the count is adequately plead. The motions will be denied as to Count VI.

**G.   Survival Statute Claims (Counts VII-XI)**

Defendants argue that, to the extent that plaintiff asserts the same claims under under the Florida Survival Statute, FLA. STAT. § 46.021 (Counts VII-XI), the defenses applicable to Counts I-VI are equally applicable to Counts VII-XI.  Since the Court has not sustained the arguments as to Counts I to VI, this argument is without merit.

**IV.**

To remedy the shotgun pleading, the Court will modify the following paragraphs of the Second Amended Complaint:

1.  The words "the preceding" will be stricken in Paragraph 148 and "1 through 131" will be added to the sentence, so that it reads: "Plaintiffs incorporate and reallege herein the allegations contained in paragraphs 1 through 131."

2.  The words "the preceding" will be stricken in Paragraph 156 and "1 through 131" will be added to the sentence, so that it reads: "Plaintiffs incorporate and reallege herein the allegations contained in paragraphs 1 through 131."

3.  The words "the preceding" will be stricken in Paragraph 164 and "1 through 131" will be added to the sentence, so that it reads: "Plaintiffs incorporate and reallege herein the allegations contained in paragraphs 1 through 131."

4.  The words "the preceding" will be stricken in Paragraph 178 and "1 through 131" will be added to the sentence, so that it reads: "Plaintiffs incorporate and reallege herein the allegations contained in paragraphs 1 through 131."

5.  The words "the preceding" will be stricken in Paragraph 183 and "1 through 131" will be added to the sentence, so that it reads: "Plaintiffs incorporate and reallege herein the allegations contained in paragraphs 1 through 131."

6.  The words "the preceding" will be stricken in Paragraph 188 and "1 through 131" will be added to the sentence, so that it reads: "Plaintiffs incorporate and reallege herein the allegations contained in paragraphs 1 through 131."

Additionally, plaintiff has attempted to embed a Count Twelve, loss of consortium, in the portion of the Second Amended Complaint labeled Counts Seven through Eleven. The Court finds this improper, and the purported Count Twelve will be dismissed.

Accordingly, it is now

**ORDERED**:

1.  Defendants' Motions to Dismiss the Second Amended Complaint (Doc. #28-29, 31, 36-17) are **DENIED.**

2.  The Second Amended Complaint is amended as set forth above.

3.  The purported Count Twelve is **dismissed** without prejudice.

**DONE AND ORDERED** at Fort Myers, Florida, this ___27th___ day of June, 2005.

                                                                        _____
                                                                        JOHN E. STEELE
                                                                        United States District Judge